FILED
Sep 15, 2022
09:36 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| John Earheart, Jr., | ) | Docket No. 2019-06-1297 |
| **Employee,** | ) | |
| v. | ) | |
| Central Transport, Inc., | ) | State File No. 52124-2018 |
| **Employer,** | ) | |
| And | ) | |
| Cherokee Insurance Co., | ) | Judge Kenneth M. Switzer |
| **Carrier.** | ) | |

## COMPENSATION ORDER

At a compensation hearing on September 6, 2022, the parties narrowed the issues to just one: John Earheart, Jr.'s entitlement to attorney's fees and costs for Central Transport, Inc.'s alleged wrongful failure to timely pay temporary disability benefits.

The parties previously resolved the question of his eligibility for these benefits. In May 2021, Central Transport agreed to pay them on the record at an in-person hearing, and the Court ordered that Central Transport pay the amount owed. Central Transport now argues it should not be responsible for attorney's fees and costs because the Court did not make a "finding," as the statute requires, that the benefits were owed at the expedited hearing. Mr. Earheart countered that Central Transport's agreement to pay came only after extensive time and effort on his lawyer's part.

The Court agrees with Mr. Earheart and awards all the agreed benefits to which he is entitled under the Workers' Compensation Law, as well as reasonable attorney's fees and costs totaling $50,505.50.

### Claim History

Mr. Earheart worked as a delivery driver for Central Transport. On August 15, 2016, he fell on the deck of a trailer, trapping his right leg underneath him. He tore the

1

labrum in his right hip, which Dr. Thomas Byrd, an authorized physician, surgically repaired in April 2017.

Afterward, Mr. Earheart continued treating the hip with Dr. Byrd. In May 2018, he first reported heel pain that radiated up to his back. He requested treatment for his back, which Central Transport denied. Ultimately he filed a hearing request seeking a decision on the record. Central Transport did not object to the Court deciding the issues by a review of the record, nor did it submit a brief or evidence to support its defense. The Court ordered Central Transport to offer panels to treat Mr. Earheart's hip and back, although Dr. Byrd later resumed treating the hip. The Court also referred the case to the Compliance Program for consideration of the imposition of penalties.

Mr. Earheart later filed an additional request for expedited hearing, this time seeking temporary disability benefits. After prolonged discovery, the day before the May 13, 2021 hearing, Central Transport agreed to pay the requested sum. It later agreed to a twenty-five percent penalty as well. The parties announced this agreement at the hearing, and the Court issued an expedited hearing order memorializing it and ordering the agreed relief. At that time, the Court reserved ruling on Mr. Earheart's request for attorney's fees and costs under section 50-6-226(d)(1)(B). This order, like the first expedited hearing order, referred the case to the Compliance Program for consideration of the imposition of penalties.

After completing treatment, the parties agreed to a permanent impairment of four percent. According to the final dispute certification notice, they disagreed on Mr. Earheart's entitlement to increased benefits and whether Central Transport should pay his attorney's fees. But at the outset of the compensation hearing, Central Transport announced it agreed to pay the increased benefits of $20,068.79 that Mr. Earheart had demanded.

Mr. Earheart offered uncontroverted proof, over Central Transport's objection, regarding the events that led to him filing the second request for expedited hearing and specifically requesting the attorney's fee and costs.[1]

He testified that in October 2018, the nurse case manager informed him that he was scheduled to see Dr. Malcolm Baxter. Mr. Earheart thought Dr. Baxter was treating his

---

[1] Central Transport argued that, since it agreed to pay the increased permanent partial disability benefits, the parties did not need to offer proof. The Court disagreed and allowed it not on that issue, but rather on the attorney's fees and costs dispute relative to temporary disability benefits. Central Transport's attorney stated that he would have brought witnesses and introduced other proof had he known this was an issue. However, in an attachment to the dispute certification notice, he wrote to the mediator, "I believe the attorney fees and whether or not the EE is eligible for the PPD multipliers would be the only two disputed issues."

2

back, but instead he had been hired to perform an employer's examination. Dr. Baxter placed him at maximum medical improvement after a single visit.

Central Transport argued that its adjuster, Mike Gehringer, did not know that Mr. Earheart was under Dr. Byrd's restrictions when it sought Dr. Baxter's opinion. However, Mr. Earheart introduced a form listing restrictions from Dr. Byrd. The form notes that it was faxed to Mr. Gehringer on February 24, 2018.

Mr. Earheart testified that he had been working light duty after his hip surgery starting in March 2018, performing clerical work at Central Transport and later at FiftyForward, a senior center. He was working at FiftyForward on December 18 when Mr. Gehringer called to inform him that he was released at maximum medical improvement and should immediately contact Central Transport.

Mr. Earheart said he called his supervisors and the local HR supervisor, all of whom seemed to know nothing about the release or if he was still on light duty. Mr. Earheart then suggested he take three days of paid time off on December 19-21, "while everything gets sorted out." They agreed, the paid time off was approved, and he was paid for that time. But when Mr. Earheart attempted to clock in on the first work day after the Christmas holiday on December 26, he was unable to do so and sent home.

Mr. Earheart introduced notes from the adjuster dated January 2, 2019, stating:

EMP Terminated today. Separation approved with effective date of 12/14/2018. Employee was deemed/notified of MMI status with a minimal % impairment rating and failed or otherwise refused to return to the position for which he was originally hired despite contacting local terminal staff, acknowledging same release and commitment to return to work. As such, same actions or omissions constituted job abandonment[.]

Mr. Earheart received an email on January 2 stating that he was "voluntarily" terminated. The email closely tracked the adjuster's note: "deemed/notified of MMI status with a minimal % impairment rating and failed or otherwise refused to return to the position for which he was originally hired despite contacting local terminal staff, acknowledging same release and commitment to return to work."

Mr. Earheart testified that a separation letter he received later stated that he had not worked on December 13, 14 and 17, but he did, as shown by the timesheets. The timesheets also listed "PTO" days on December 19-21. He maintained that he never violated Central Transport's attendance policy or had any "points" for other nonattendance.

After the termination, Mr. Earheart found another job in August 2019 performing similar work but which does not require him to load and unload his truck. He received no income during the eight months he continued healing from the injury.

Central Transport offered no proof regarding the propriety of Mr. Earheart's discharge—specifically, it did not introduce evidence of a workplace rule regarding attendance or that Mr. Earheart violated this or any other rule. It also did not attempt to disprove that Mr. Earheart remained under Dr. Byrd's work restrictions before and after he was terminated.

In support of his request for attorney's fees and costs, Mr. Earheart's lawyer introduced an affidavit requesting $300 per hour. He attached a detailed statement listing the dates and tasks performed. The total amount requested is $35,910.00 in attorney's fees and $14,595.50 in costs, or $50,505.50.

Mr. Earheart's lawyer did not take twenty percent of the temporary disability award in May 2021. He said he started tracking his time only after the first expedited hearing order in October 2020.

Counsel acknowledged that Mr. Earheart had also hired him to pursue a separate claim against Central Transport for a retaliatory discharge. That case, removed to federal court, was ultimately dismissed on summary judgment, appealed and then settled for a confidential, "substantial" amount during the pendency of the appeal. Mr. Earheart's lawyer took one-third of that recovery. Counsel said that the issue in that lawsuit was "intimately, intricately intertwined" with the issues in the workers' compensation case.

In response, Central Transport did not contest the reasonableness of the hourly rate his counsel requested, nor did it dispute the accuracy of his statement detailing his time and work performed. However, Central Transport pointed out that many of the tasks Mr. Earheart's lawyer listed related to the retaliatory discharge claim and that it was represented by a different attorney in that claim. Central Transport's workers' compensation attorney attended some but not all of the depositions. Its counsel conceded that the depositions of the adjuster and Dr. Byrd were necessary to the outcome in this case.

**Findings of Fact and Conclusions of Law**

At a compensation hearing, Mr. Earheart must present sufficient evidence showing that he is entitled to the requested relief by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2021).

As an initial matter, Central Transport argued that because it agreed to pay the disputed temporary disability benefits previously (and now the contested increased benefits), fees under section 50-6-226(d)(1)(B) are inapplicable.

That subdivision states that a court may order fees and costs when the employer "wrongfully fails to timely initiate any of the benefits to which the employee is entitled . . . if the workers' compensation judge makes a finding that the benefits were owed at an expedited *or compensation hearing*." (Emphasis added). The Appeals Board has interpreted this provision so that "to be eligible for an award of reasonable attorney's fees and expenses under section 226(d)(1), an employee must show . . . that the employer was erroneous or incorrect in denying the employee's claim for benefits." *Walls v. United Technologies Corp.,* 2021 TN Wrk. Comp. App. Bd. LEXIS 27, at *19 (Aug. 6, 2021).

According to Central Transport, the Court did not "make a finding" but rather Central Transport voluntarily agreed to pay the disputed benefits, so this subdivision does not come into play.

The Court disagrees. If it were to accept this excessively strict reading of the statute, an employer would have no incentive to timely initiate benefits, but could always wait until its feet are held to the fire and then comply at the last minute, without consequences. This is inconsistent with a fair, expeditious, and efficient workers' compensation system.

Moreover, as Mr. Earheart's attorney argued, Central Transport made this decision only *after* he had expended significant time and effort. While the Court did not specifically make a "finding" in the expedited hearing order for temporary disability benefits, it implicitly did so by explicitly holding the attorney's fee issue in abeyance.

Further, the statute permits this type of finding after an expedited "or compensation hearing," so nothing precludes this Court from weighing the evidence now and making a finding *at this compensation hearing*. Central Transport was aware that attorney's fees were disputed, as shown by its attorney's communication with the mediator about the issues for trial. But also, the August 19 Order on Motion to Quash memorializes that attorney's fees is an issue and that Central Transport's attorney told the Court he did not plan to offer proof at the hearing. Central Transport and its counsel made a strategic choice at that time.

Considering the evidence, Mr. Earheart credibly testified, and supported with documentary evidence, that he reported to work at all scheduled times while on light-duty for Central Transport. "A termination due to a violation of workplace rules may relieve an employer of its obligation to provide temporary partial disability benefits, provided the termination was related to the workplace violation." *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *8 (Dec. 11, 2015).

No proof here suggests that Mr. Earheart violated a workplace rule, so Central Transport was never relieved of its obligation to provide temporary disability benefits. The Court finds that Central Transport was erroneous or incorrect in its decisions: 1) to rely

upon an opinion on maximum medical improvement from its own physician rather than the authorized doctor, and 2) to terminate Mr. Earheart, thereby ending temporary disability benefits.

This conclusion is bolstered, as Mr. Earheart's counsel suggested, by Tennessee Code Annotated section 50-6-234(b). It states in relevant part that "the determination of attainment of maximum medical improvement . . . shall be made by the physician selected in accordance with § 50-6-204." Here, Dr. Byrd was the panel-selected physician and the proper candidate to pronounce maximum medical improvement, not Dr. Baxter, the employer's examination physician.

Therefore, the Court finds at this compensation hearing that Central Transport wrongfully failed to timely pay the temporary disability benefits to which Mr. Earheart was entitled. The Court further finds that Mr. Earheart's attorney's extensive efforts, including deposing numerous lay witnesses and Dr. Byrd, led to Central Transport conceding on the eve of trial that those benefits were owed. Mr. Earheart is entitled to reasonable attorney's fees and costs under section 50-6-226(d)(1)(B).

The question now becomes, what amount of fees and costs is "reasonable"? Mr. Earheart's counsel argued that he had to take thirteen depositions, costing approximately $14,000, which he advanced. He characterized the issues in the workers' compensation case and the retaliatory discharge lawsuit as "intimately, intricately intertwined."

For his part, Central Transport's attorney conceded that the depositions of Dr. Byrd and Mr. Gehringer were necessary to this case, but he questioned the relevance of the rest of the depositions, some of which he did not even attend. The depositions are almost all styled for the retaliatory discharge lawsuit and not this case.

Admittedly, many of the tasks Mr. Earheart's lawyer performed advanced both cases. But it would be impossible to apportion them to one case or the other. The Court agrees with Mr. Earheart's attorney that a retaliatory discharge allegation (federal case) and whether Mr. Earheart violated a workplace rule (workers' compensation case) involve similar factual issues. While the total amount of fees and costs is sizeable, Central Transport did not agree to pay the temporary disability benefits until the eve of trial. It had opportunities to reach that conclusion sooner but did not. In sum, the Court finds that all the work and expense was necessary to make Central Transport reach its eleventh-hour decision. The amount is reasonable.

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1. Central Transport shall provide medical treatment with Dr. Byrd for Mr. Earheart's hip that is causally related to the work injury, reasonable and

necessary. Likewise it shall provide medical treatment with Dr. Mathews for his back that is causally related to the work injury, reasonable and necessary.

2. By the parties' agreement, Mr. Earheart is entitled to $20,068.79 in permanent partial disability benefits.

3. Central Transport must pay $50,505.50 in attorney's fees and costs to Mr. Earheart's counsel.

4. Central Transport or the Carrier shall pay the $150 filing fee to the Clerk of the Court of Workers' Compensation Claims no later than five business days after this order becomes final.

5. Central Transport or the Carrier shall complete and file an SD2 form within ten days after the order becomes final.

6. Unless appealed, this order shall become final thirty days after entry.

**ENTERED September 15, 2022.**


*Kenneth M. Switzer*
**JUDGE KENNETH M. SWITZER**
Court of Workers' Compensation Claims

## APPENDIX

Technical Record:
1. Petition for Benefit Determination, July 12, 2019
2. Dispute Certification Notice, September 11, 2020
3. Request for Expedited Hearing, September 17, 2020
4. Expedited Hearing Order Granting Medical Benefits (Decision on the Record)
5. Order on Status Hearing, December 9, 2020
6. Petition for Benefit Determination, January 21, 2021
7. Order on Status Hearing, March 8, 2021
8. Dispute Certification Notice, March 12, 2021
9. Hearing Request, March 31, 2021
10. Pretrial Hearing Order
11. Pre-Trial Brief of Employee, April 28, 2021
12. Order
13. Order on Status Hearing, June 7, 2021
14. Order on Status Hearing, August 10, 2021
15. Order on Status Hearing, October 26, 2021

16. Order on Status Hearing, January 10, 2022
17. Order on Status Hearing, April 12, 2022
18. Order Setting Compensation Hearing
19. Dispute Certification Notice, August 1, 2022, and additional issues
20. Motion to Quash Subpoena
21. Reply in Opposition to Defendants' Motion to Quash Subpoena
22. Order on Motion to Quash
23. Pre-Trial Statement of Employee
24. Employer's Pre-Hearing Statement

Exhibits:

A. Declaration of John Earheart
   1. (*See* Expedited Hearing Order Granting Medical Benefits (Decision on the Record))
   2. Fax/restrictions
   3. Dr. Baxter Independent Medical Examination, October 25, 2018
   4. Transition2Work Weekly Timesheet, December 14, 2018, December 18, 2018
   5. Miscellaneous Pay Request, December 29, 2018
   6. Central Transport termination letter to Mr. Earheart, January 2, 2019
   7. Deposition transcript excerpt, James "Matt" Combs
   8. Deposition transcript excerpt, Steven Mann Skelley
   9. Dr. Liddle records, March 20, 2019
B. Deposition Transcript of Dean Kuska
C. Deposition Transcript of Dr. Thomas Byrd, January 12, 2021, January 19, 2021
D. Abridged Deposition Transcripts
   1. Michael Gehringer, December 16, 2020
   2. Michael Gehringer, January 11, 2021
   3. Michael Gehringer, February 4, 2021
   4. Steven Mann Skelley
   5. James "Matt" Combs
   6. Marnie Huss
E. Employee's Telephone Records
F. 1. Affidavit of D. Andrew Saulters
   2. Saulters's Statement of Services/Time
   3. Costs
G. Workers' Compensation-Employee Medical & Work Status Form-Dr. Byrd, February 23, 2018
H. Employee Acknowledgement, modified duty at Fifty Forward, July 11, 2018,
I. Text message, nurse case manager, setting appointment with Dr. Baxter
J. Liberty Bell Agency, Inc.-Status Form
K. Eform, January 2, 20219, Terminated Driver/Dock Worker Notice
L. Transition2Work Weekly Timesheets, December 14, 2018, December 18, 2018
M. Pay Stub, January 4, 2019, for pay period December 16-22, 2018

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Order was sent as indicated on September 15, 2022.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Drew Saulters, Employee's attorney | | | X | dsaulters@ortalekelley.com jarmstrong@ortalekelley.com |
| Richard Clark, Employer's attorney | | | X | rclark@eraclides.com |

_____
**Penny Shrum, Clerk of Court**
**WC.CourtClerk@tn.gov**

9



<u>Compensation Order Right to Appeal</u>:

If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board. *See the Rules governing the Workers' Compensation Appeals Board on the Bureau's website*

**If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*